IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In the Matter of:

Mark T. Nickeas and Terese A. Nickeas,

(Chapter 7)

Debtors.

Case No. 11-12304

MEMORANDUM DECISION

The debtors operate a small golf course with a bar and snack-food eatery, which is virtually dependent on its liquor license. Apex Mortgage Corp. claims a lien on that license. The debtors seek to avoid the lien under 11 U.S.C. § 522(f)(1)(B)(ii), arguing that the liquor license is a "tool of the trade." Specifically, they claim an exemption in the license under § 522(d)(5), the "wildcard" exemption. They value the license at $5,000.

The debtors admit that no bankruptcy court has held that an intangible such as a liquor license is a tool of the trade within the meaning of § 522(f). (Debtors' Letter Br. 2). However, they argue that the court should take a more expansive view of what constitutes a tool of the trade:

> In our ever-changing economy in which the tangible 'tools' of manufacturing and manual labor are increasingly abandoned for a marketplace of ideas driven by information and technology, court decisions restricting 'tools of the trade' to the hammer and sickle of a by-gone era do little to advance the protection of the bankruptcy code for the 21st century worker, whose 'tools' are more likely to include software, online accounts, data, intellectual property, and the like. When construing the bankruptcy code's protection of debtors' 'tools,' the courts should recognize the realities of a shift from a manufacturing economy to an information economy.

1

(Debtor's Letter Br. 3). Apex cites two bankruptcy cases that have held a liquor license is not a tool of the trade: *In re Caylor*, 31 B.R. 821 (Bankr. W.D. Pa. 1983) and *In re Johnson*, 255 B.R. 554 (Bankr. S.D. Ohio 2000).

Section 522(f) of the Bankruptcy Code provides that a debtor may avoid liens on certain exempt property "to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a nonpossessory, nonpurchase-money security interest in any . . . implements, professional books, or tools, of the trade of the debtor . . . ." 11 U.S.C. § 522(f)(1)(B)(ii). In the Seventh Circuit, "the reference in section 552(f)[(1)(B)(ii)]¹ to the tools of the trade exemption is to both the federal exemption and the corresponding state exemption, depending on which the debtor has elected . . ." *In re Thompson*, 867 F.2d 416, 420 (7th Cir. 1989). In *Thompson*, § 522(f)(1)(B)(ii) "took on the broader meaning under the Wisconsin exemption statute," and in a case decided two years earlier, *Patterson*, it "took on the narrow meaning under the federal exemption list." *In re Stallsworth*, 133 B.R. 470, 474 (Bankr. S.D. Ind. 1991) (citing *Thompson*, 867 F.2d 416; *In re Patterson*, 825 F.2d 1140, 1146 (7th Cir. 1987)). "The two cases together, therefore, stand for the proposition that the term tools of the trade in [§ 522(f)(1)(B)(ii)] takes on the meaning of the law providing the exemption." *Id.*

In *Thompson*, the Court of Appeals affirmed the avoidance of a lien on farm equipment, including tractors and a combine, under § 522(f), where the debtors had taken the Wisconsin tools of the trade exemption in the equipment. *Thompson*, 867 F.2d 416. In contrast, in *Patterson* the court held that similar equipment – the debtors' tractor – and cattle were not tools of the trade under § 522(d)(6) and therefore § 522(f) because the federal exemptions were much narrower.

---

¹ At the time *Thompson* was decided, the provision for avoidance of a lien on tools of the trade was located at § 522(f)(2)(B). It was enacted at 11 U.S.C. § 522(f)(2)(B) as part of the 1978 Bankruptcy Code. *See* Pub. L. No. 95-598, § 522, 92 Stat. 2549 (Nov. 6, 1978). As part of the Bankruptcy Reform Act of 1994, the numbering of § 522(f) was changed and the old § 522(f)(2)(B) became § 522(f)(1)(B)(ii). *See* Pub. L. No. 103-394, § 303, 108 Stat. 4106.

2

*Patterson*, 825 F.2d 1140. The court explained that "[t]he purpose of the tools of the trade exemption is to enable an artisan to retain tools of modest value so that he is not forced out of his trade." *In re Patterson*, 825 F.2d 1140, 1146 (7th Cir. 1987). Strangely, the court did not address why it thought tractors were not farm implements.

In *Patterson*, the debtors had argued that both tractors and cattle were "instrumentalities for turning raw materials (grass, hay, water, etc.) into salable products (milk, cheese, etc.)," and therefore should be considered tools of the trade in the broad sense. *Patterson*, 825 F.2d at 1146. The court dismissed this argument because under such a broad view "a businessman's secretary is by the same token a tool of the trade," and it would expand the exemption too far because "all capital and labor inputs are tools in this sense; the only things a business buys that [would not be] tools of its trade are raw materials." *Id.* Additionally, the broad definition "makes it hard to explain the statute's explicit mention of so petty an item as 'professional books,' which rarely (though sometimes) will have a substantial value, or the ceiling of $750 per debtor." *Id.* Finally, "[t]here would be no point in allowing a debtor to exempt $750 worth of equipment that might have a market value of many thousands of dollars. He would have to sell it anyway, and probably he could not replace it; certainly he could not continue to *use* it in his trade." *Id.*

Whether a liquor license constitutes a tool of the trade has been considered by two bankruptcy courts, one in the context of the federal exemptions and one in the context of Ohio exemptions. The bankruptcy court for the Western District of Pennsylvania held that a liquor license did not constitute a tool of the trade under § 522(d)(6). *McNamara v. Kienholz (In re Stubenhofer)*, 31 B.R. 820 (Bankr. W.D. Pa. 1983). The court determined that a liquor license was "a right or a privilege to transact a type of business, and is not a professional book or a tool or an implement by means of which acts involved in the conduct of a trade or business are

3

performed." *Id.* at 821. The court reiterated its holding in another case issued the same day. *In re Caylor*, 31 B.R. 821 (Bankr. W.D. Pa. 1983).

Citing *Stubenhofer* and *Caylor*, the bankruptcy court for the Southern District of Ohio denied an exemption in a liquor license under Ohio's tools of the trade exemption. *In re Johnson*, 255 B.R. 554 (Bankr. S.D. Ohio 2000). The court explained that "[t]he Pennsylvania bankruptcy court decided *Matter of Stubenhofer* using federal exemptions nearly identical to those available in Ohio, as well as state liquor licensing laws, which are also fundamentally similar to Ohio's own laws." *Id.* at 555. The court further stated, "It is noteworthy that Ohio and Pennsylvania law is similar in its treatment of liquor licenses. Like Pennsylvania, Ohio allows a liquor license to be transferred, sold, inherited, and renewed." *Id.* (citing *Bavely v. United States (In re Terwilliger's Catering Plus, Inc.)*, 911 F.2d 1168 (6th Cir. 1990)).

*Id.*

The court in *Johnson* did not explain why it mattered that the liquor license was transferable. It may be because a liquor license that is transferable has significant realizable market value for a creditor, as opposed to a non-transferable license which would have no resale value:

> The legislative history of § 522(f) indicated that the drafters of the Code enacted the lien avoidance of that section primarily to prevent over reaching creditors who take [a] security interest in debtor's household goods and small hand tools from repossessing or threatening to repossess that property which has little realizable market value upon repossession and sale by the creditor, but high replacement cost for the debtor who needs the item. The theory behind the provision is that there is no real harm to the creditor because the collateral has insignificant resale value and, therefore, no real collateral value, and the enactment of the provision was, therefore, not a significant taking of any property from the creditor and was within constitutional bounds.

*In re Trainer*, 56 B.R. 21, 23 (Bankr. S.D. Tex. 1985) (citing H. Rep. No. 95-595, 95th Cong. 2d Sess. (1978) 127 U.S. Code Cong. & Admin. News pp. 5787, 6088). Like in Pennsylvania and Ohio, liquor licenses in Wisconsin are transferable. "Every alcohol beverage license or permit

4

may be transferred to another place or premises within the same municipality," and "[l]icenses to sell alcohol beverages may be transferred to persons other than the licensee if the license, or an applicant for a subsequently granted license, dies, becomes bankrupt or makes an assignment for the benefit of creditors during the license year or after filing the application." Wis. Stat. § 125.04(12).

Beyond liquor licenses, it is not clear whether intangibles may constitute tools of the trade at all. The bankruptcy court for the Northern District of Illinois held that a commodity trader's seat is not a tool of the trade under the Illinois exemption statute. *In re Zais*, 202 B.R. 263, 265 (Bankr. N.D. Ill. 1996). Looking to the case law for the federal tools of the trade exemption, because the Illinois tools of the trade exemption "closely resembles" the federal one, the court noted that "no authority, at either the state or federal level, holds that an intangible item is or is not a tool of the trade." *Id.* at 265 n.2. Citing *Patterson*, the court determined that "intangible or not . . . no purpose would be served by permitting Mr. Zais to claim a $750.00 exemption for an item valued at $5,300.00." *Id.* at 266. "Tools of modest value, rather than capital assets, appear to be the items sought to be characterized as tools of the trade." *Id.* Other bankruptcy courts have held that a bank account is not a tool of the trade, even if it is necessary for a debtor's business. *See, e.g., In re Cook*, No. 02-41255, 2003 WL 25273841 (Bankr. D. Idaho Jan. 9, 2003); *In re King*, 153 B.R. 229, 231 (Bankr. N.D. Ill. 1993); *In re Frierson*, 15 B.R. 157, 159 (Bankr. D. Kan. 1981).

In this case, the debtors have taken an exemption in the liquor license under 11 U.S.C. § 522(d)(5) wildcard exemption. They seek to have Apex's lien stripped off of the liquor license under § 522(f)(1)(B)(ii) as a tool of the trade. Because the debtors have elected the federal exemptions, "tools of the trade" in § 522(f) takes on the same meaning that it does in § 522(d)(6). Under the narrow interpretation of tools of the trade in *Patterson*, a liquor license

5

does not qualify as a tool of the trade. Liquor licenses are not personal tools of modest value like "rakes and other hand tools." *Patterson*, 825 F.2d at 1147.

Debtors may be right that as the economy becomes more technology-based, the definition of tools may have to expand to accommodate intangibles that a technology worker uses in his business. However, this argument does not advance the position of a liquor license as a tool of the trade. Liquor licenses have been in existence since before the founding of this country. *See, e.g.,* Sidney and Beatrice Webb, *The History of Liquor Licensing in England Principally from 1700 to 1830* (Longmans, Green and Co. 1903). Even if there are modest intangibles that have become "tools" for the modern worker, a liquor license would not fall into that category.

The Seventh Circuit Court of Appeals has also questioned the practice of using § 522(f)'s lien avoidance for exempt tools of the trade on property exempted through the wildcard exemption:

> It can be argued that the "wild card" exemption of 522(d)(5), which allows the debtor to exempt his "aggregate interest in any property, not to exceed in value $400 plus up to $3,750 of any unused amount of the exemption provided" in 11 U.S.C. § 522(d)(1) for the debtor's residence, can be applied to property consisting of tools of the trade, thereby turning the wild-card exemption into another tools of the trade exemption that can be used with section 522(f)(2)(B) to avoid liens. Weird as this argument may seem, the Third Circuit accepted it in *Augustine v. United States,* [675 F.2d 582, 585–86 (3d Cir. 1982)]. We ducked the issue in *Patterson,* see 825 F.2d at 1142, 1148, and need not resolve it here.

*Thompson*, 867 F.2d at 420. The 1994 amendments support this skepticisim. The amendments added a dollar limitation to § 522(f) where a debtor has claimed exemptions under state law. If the state law has a tools of the trade exemption "without limitation in amount," the debtor may only avoid a lien on tools of the trade up to a value of $5,850.[2] If a debtor used the federal

---

[2] Dollar amount as adjusted by the Judicial Conference of the United States. *See* 11 U.S.C. § 104. Since this case was converted to Chapter 7 in 2012, the amount is $5,850 according to the revisions that went into effect on April 1, 2010. Judicial Conference of the United States, *Revision of Certain Dollar Amounts in the Bankruptcy Code Prescribed Under Section 104(A) of the Code*, 75 F.R. 8747, 8747-49 (Feb. 25, 2010). The amount is now $6,225 for cases filed on or after April 1, 2013.

6

exemptions, however, and tried to avoid liens on all property exempted under § 522(d)(5) ($2,175) and (d)(6) ($11,975), that could amount to liens avoided on property with value up to $14,150. Therefore, it seems likely that Congress intended for the dollar limitation in § 522(d)(6) to apply when a debtor tried to avoid a lien on tools of the trade under § 522(f). In this case, the debtors have already avoided liens on the full value of their exemption under § 522(d)(6).

In conclusion, for lien avoidance under § 522(f), a liquor license is not a tool of the trade. The debtors' may not avoid Apex's lien on their liquor license. It may be so ordered.

Dated: August 6, 2013

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE